IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SAMUEL MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-267-STE |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

I. **PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law

Judge (ALJ) issued an unfavorable decision. (TR. 14-26). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application date of March 6, 2014, his alleged onset date. (TR. 16). At step two, the ALJ determined that Mr. Martin had the following severe impairments: degenerative disc disease of the lumbar spine; status post lumbar fusion, characterized as failed back syndrome; chronic pain syndrome; and vertigo. (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 21).

At step four, the ALJ concluded that Mr. Martin was unable to perform any past relevant work. (TR. 24). Even so, the ALJ concluded that Plaintiff had retained the residual functional capacity (RFC) to:

> [P]erform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can lift and /or carry up to 10 pounds occasionally, lift and/or carry less than 10 pounds frequently, sit for up to 6 hours in an 8-hour workday and stand and/or walk up to 2 hours in an 8-hour workday. He cannot climb ladders, ropes or scaffolding. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He cannot be exposed to unprotected heights or

dangerous machinery. He can occasionally operate pedals and foot controls. He is capable of frequent grasping, handling and fine motor manipulation. The claimant would require a sit stand option such that he would be able to stand up at least every 50 to 55 minutes for up to 5 minutes, but would be able to remain on task and attentive to his duties. The claimant can only occasionally walk on uneven surfaces. The claimant can only occasionally reach or work overhead. The claimant would also need to use a cane in the right dominant hand to ambulate.

(TR. 21-22). At the administrative hearing, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 66-68). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT) that Mr. Martin could perform. (TR. 67-68). At step five, the ALJ adopted the testimony of the VE and concluded that Mr. Martin was not disabled based on his ability to perform the identified jobs. (TR. 26).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

3

## IV. ISSUES PRESENTED

On appeal, Plaintiff alleges that the ALJ committed error at steps two and five.

## V. STEP TWO

At step two, the ALJ determined that Mr. Martin had severe impairments involving: degenerative disc disease of the lumbar spine; status post lumbar fusion, characterized as failed back syndrome; chronic pain syndrome; and vertigo. (TR. 17). The ALJ also concluded that Plaintiff's impairments of major depressive disorder and generalized anxiety disorder were not severe. (TR. 17). In reaching this conclusion, the ALJ stated: "[T]hese medically determinable impairments do not appear to cause more than minimal limitation in the claimant's ability to perform basic work activities and are therefore considered non-severe." (TR. 17); *see* TR. 20, 21.

Mr. Martin argues that the ALJ: (1) improperly ignored Plaintiff's in-patient hospitalization for suicidal ideation; (2) improperly ignored Plaintiff's sinus tachycardia; (3) erred in failing to conclude that the depression, anxiety, and heart issues were severe impairments at step two; and (4) failed to consider Plaintiff's severe and nonsevere impairments in combination and throughout the disability process. The Court rejects these arguments and finds no reversible error.

First, the ALJ did not ignore Plaintiff's in-patient hospitalization for suicidal ideations, as is evidenced by his extensive discussion of it at step two. *See* TR. 20. Mr. Martin argues that this hospitalization is "severe enough to count in the fourth domain of the [Psychiatric Review Technique]" and "[t]o not place any mental limitations on

Claimant after his episode and in light of his continuing treatment is unfair." (ECF No. 19:5). But it was the province of the ALJ to have concluded otherwise after weighing the evidence, which he did. *See supra*. Now, Mr. Martin is essentially asking the Court to re-weigh the evidence and reach a different conclusion, something the Court cannot do. See *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015 (noting that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

Second, Plaintiff argues that the ALJ "completely ignored" the Claimant's sinus tachycardia, which was evidenced by: (1) a visit to the emergency room in July 2015 following complaints of chest pain and (2) Plaintiff wearing a heart monitor for 30 days following complaints of dizziness and shortness of breath. (ECF No. 19:5-6). The Court disagrees.

In his discussion at step two, the ALJ discussed the July 2015 emergency room visit for chest pain, noting that Plaintiff had believed that the chest pain was due to a medication side effect. (TR. 17, 961). Also at step two, the ALJ discussed Mr. Martin's symptoms of dizziness, noting: (1) that Plaintiff had undergone MRI testing following ongoing complaints of dizziness, which revealed "a mild Chiari I malformation" and (2) that Dr. Kyle Mangels stated that he did not believe Plaintiff's dizziness was related to his Chiari I malformation. (TR. 17, 18). Even so, the ALJ apparently credited Plaintiff's symptoms involving dizziness, as the ALJ ultimately concluded that Mr. Martin suffered from severe vertigo. (TR. 17).

5

Plaintiff complains that the ALJ did not discuss the heart monitor, arguing that Mr. Martin was wearing his heart monitor when he visited Dr. Mangels and the physician stated: "His symptoms sound a lot like he has a cardiac issue." (TR. 615-616). But Dr. Mangels, a physician at the Oklahoma Spine and Brain Institute, did not render a definitive opinion on this issue. Again, it appears as though Mr. Martin is asking the Court to re-weigh the evidence, namely a single comment from Dr. Mangels, to reach a conclusion that the sinus tachycardia constituted a severe impairment. But as explained, the Court is prohibited from re-weighing the evidence. *See supra*. Although the ALJ did not mention the heart monitor, he was "not required to discuss every piece of evidence" so long as the record demonstrates that the ALJ has considered all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Here, the ALJ stated that he had considered all of the evidence[1] and the Court will take him at his word. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at [his] word.") (internal quotation marks and citation omitted) (alteration in original).

Third, Plaintiff argues that the ALJ erred in failing to conclude that the depression, anxiety, and sinus tachycardia were severe impairments at step two. (ECF No. 19:4-6). But even assuming the truth of Mr. Martin's argument, any such error would be deemed harmless based on the ALJ's finding of other severe impairments at step two. "[O]nce an

---

[1] (TR. 14-15).

ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Barrett v. Astrue,* 340 F. App'x 481, 484 (10th Cir. 2009) (quoting 20 C.F.R. § 404.1523) (alteration in original). Consequently, the undersigned "can easily dispose of" Plaintiff's step-two challenge regarding the ALJ's failure to deem the depression, anxiety, and cardiac issues as severe. *Oldham v. Astrue,* 509 F.3d 1254, 1256 (10th Cir. 2007). *See Brescia v. Astrue,* 287 F. Appx 626, 629 (10th Cir. 2008) ("Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as 'severe' at step two does not constitute reversible error....).

Finally, Plaintiff argues that the ALJ failed to consider the impairments, both severe and nonsevere, in combination and throughout the disability process. (ECF No. 19:5). The Court disagrees. The ALJ stated that he considered Plaintiff's impairments and combination of impairments at step three, and specifically stated the he considered "all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (TR. 17, 21). The Court takes the ALJ at his word and will not conclude otherwise. *See supra*, *Wall*.

## VI. STEP FIVE

At step five, the ALJ concluded that Mr. Martin was not disabled based on his ability to perform the jobs of order clerk, DOT #209.567-014; optical goods assembler, DOT

7

#713.687-018; and table worker, DOT #739.687-182. (TR. 26). The ALJ reached this conclusion after adopting the VE's testimony regarding Mr. Martin's ability to perform these jobs. *See* TR. 26, 66-68. Plaintiff alleges that the step five findings lacked substantial evidence because: (1) the hypothetical to the VE failed to include all of Mr. Martin's impairments and (2) a conflict existed between Mr. Martin's ability to only occasionally reach overhead, and the three jobs which required frequent reaching. (ECF Nos. 19:6-12; 24). The Court rejects both arguments.

### A. No Error in the Hypothetical

Mr. Martin argues that the step five findings lacked substantial evidence because the hypothetical to the VE, which formed the basis of the step five findings, failed to include limitations related to his sinus tachycardia, dizziness, pain, and psychological problems. (ECF No. 19:10-12). According to Mr. Martin, these impairments "would erode his ability to keep working at a consistent and productive pace and maintain regular attendance." (ECF No. 19:10). In support of this argument, Mr. Martin states that the "log of symptoms occurring when his [sinus tachycardia] flared" was "totally ignored and not factored into his RFC." (ECF No. 19:11). The Court notes that the "log of symptoms" include lightheadedness, dizziness, chest pain, and shortness of breath. (TR. 988-997). From these reported symptoms, Mr. Martin makes an unsubstantiated assumption that the symptoms would cause him to fall once a day, which the VE testified would render all employment unavailable. *See* ECF No. 19:11 ("The VE noted that if Claimant was falling once a day he would be unemployable. The symptoms from the monitored daily reports

make Claimant's symptoms much closer to once a day than to once a month."). But the problem with Mr. Martin's theory is that it lacks evidentiary support. Nowhere in the "log of symptoms" did Mr. Martin report falling, and at the hearing, Plaintiff reported falling only "every few months or so." (TR. 44, 988-997).

Accordingly, the Court rejects Plaintiff's challenge to the hypothetical and finds that it adequately reflected the "impairments and limitations that [were] borne out by the evidentiary record." *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996) (citation omitted); *Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995) (stating that the ALJ's hypothetical questions "must include all (and only) those impairments borne out by the evidentiary record").

## B. No Conflict Between the RFC and the Jobs at Step Five

As part of the RFC determination, the ALJ found that Mr. Martin could only "occasionally reach or work overhead." (TR. 22). With this limitation, the VE testified that Mr. Martin could perform three jobs, a finding that was ultimately adopted by the ALJ at step five. (TR. 26, 67-68). Plaintiff correctly cites the fact that the DOT lists all three jobs as requiring "frequent reaching." *See* DOT #209.567-014 (order clerk); DOT #713.687-018 (optical goods assembler); and DOT #739.687-182 (table worker). Because the jobs require "frequent reaching" and the RFC/hypothetical limited Plaintiff to only "occasional overhead reaching," Mr. Martin alleges that a conflict exists which: (1) was not clarified

9

by the VE and (2) undermines the step five findings. (ECF Nos. 19:8, 9; 25).[2] The Court disagrees.

Mr. Martin correctly states that the Selected Characteristics of Occupations (SCO) defines "reaching" as "[e]xtending hand(s) and arm(s) in any direction." (ECF No. 24:2) (citing SCO, Appendix C). Based on this definition and the fact that the ALJ specifically limited Plaintiff to only occasional "overhead reaching," Mr. Martin argues that the ALJ should have also defined Plaintiff's ability to reach in other directions. (ECF No. 24:2-4). According to Plaintiff, "there is no separation in the mind of the SCO with regard to reaching," so "[i]f there is a difference in the VE's mind, he failed to explain it, and the ALJ's burden of proof is not met." (ECF No. 24:4). The Court concludes that no conflict existed and the ALJ did not err at step five.

In *Segovia v. Astrue,* 226 F. App'x 801, 804 (10th Cir. 2007), the Tenth Circuit Court of Appeals addressed similar circumstances. In *Segovia*, the ALJ included the limitation of "only occasional overhead reaching" in his RFC. *Id.* at 802. With this limitation, the VE identified two jobs that the plaintiff could perform, both of which required "frequent reaching" as listed in the DOT. *Id.* at 804. The Tenth Circuit recognized that the RFC limited the claimant to "occasional overhead reaching," and that the SCO

---

[2] Mr. Martin relies on *Thomas v. Astrue*, 2013 U.S. Dist. LEXIS 21645 as support for this argument. (ECF No. 19:8-9). In *Thomas*, the court's reversal was based on the fact that no DOT codes had been given for the jobs relied on at step five, rendering it impossible for the Court to review the step five findings. *Thomas v. Astrue*, 2013 U.S. Dist. LEXIS at *2-*9. Here, the VE provided the DOT codes, *see* TR. 67-68, rendering Plaintiff's reliance on *Thomas* misplaced.

defined reaching as "[e]xtending hand(s) and arm(s) *in any direction.*" *Id.* at 804 (emphasis in original). However, because "[t]he *SCO* does not separately classify overhead reaching," the Court held that "under the *SCO*, even a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching." *Id.* Ultimately, the Court found no step five error, stating:

> The VE was aware of [the plaintiff's] limitations on overhead reaching, and he testified both that [the plaintiff] could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications. In these circumstances, the VE's testimony does not conflict with the DOT and the SCO so much as it clarifies how their broad categorizations apply to this specific case.

*Id.* (internal citation omitted). *Segovia* is persuasive in the instant case.

Here, the VE: (1) was aware of the limitation which limited Mr. Martin to only occasional overhead reaching; (2) testified that with the limitation, Plaintiff could perform the three identified jobs; and (3) stated that he would advise the Court if any conflicts existed between his testimony and the DOT. (TR. 65-68). Accordingly, the Court concludes that no conflict existed, because: (1) the VE did not alert the ALJ to a conflict, after specifically advising the Court that he would do so if necessary,[3] and (2) the SCO does not dictate a contrary result because "even a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching." *Segovia*, 226 F. App'x at 804.

---

[3] (TR. 65).

Based on these findings, the Court affirms the Commissioner's decision. See Lawson v. Comm'r of Soc. Sec. Admin., No. CIV-17-1139-SM, 2018 WL 3080092, at *6–7 (W.D. Okla. May 25, 2018), report and recommendation adopted sub nom. Lawson v. Berryhill, No. CIV-17-1139-C, 2018 WL 3077800 (W.D. Okla. June 21, 2018) (finding no error in the ALJ's reliance at step five on jobs involving "frequent reaching" in light of an RFC which limited the plaintiff to "occasional overhead reaching.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on February 14, 2019.

/s/ Shon T. Erwin

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE